THE HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ALASKA AIRLINES, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>BRADLEY CAREY and CELESTE CAREY, and CAREY TRAVEL, INC., a Washington corporation,<br><br>　　　　Defendants,<br>　Counterclaimants, and Third<br>　　　Party Plaintiffs,<br><br>　　v.<br><br>POINTS INTERNATIONAL LTD.,<br><br>　　　Third Party Defendant. | No. C07-5711 RBL<br><br>ORDER ON PLAINTIFF'S MOTION FOR ATTORNEYS' FEES<br>[Dkt. #232] |

## I. INTRODUCTION

This matter is before the Court on Plaintiff's motion for attorneys' fees, costs, and litigation expenses [Dkt. #232]. For the reasons set forth below, the Court awards Plaintiff fees and costs in a reduced amount.

## II. BACKGROUND

The factual and legal disputes underlying this fee application are well known to the parties and the

ORDER - 1

Court. Alaska filed this action seeking to enjoin the Carey defendants from violating the terms and conditions of its Mileage Plan.  It asserted 8 causes of action, for computer and common law fraud, violations of the Washington Consumer Protection Act, tortious interference with contractual and business expectancy relations, unjust enrichment, aiding and abetting fraud, and breach of contract.  All were based on Alaska's contention that Carey was buying and selling its miles on an illegitimate black market, in violation of the Terms and Conditions of its Mileage Plan.  It sought damages and a permanent injunction.  Carey asserted counter and third party claims.

The case was vigorously litigated over three years.  There are almost three hundred entries on the Court's docket, including an unusually high number of motions, responses, replies and Orders. The parties also engaged in lengthy and document intensive discovery both with and without the court's involvement.  Through this process, the claims and parties at issue were narrowed down.  Alaska ultimately moved for summary judgment and a permanent injunction [Dkt. #104].  After much additional briefing, discovery, and a lengthy oral argument, the Court granted the Motion for Summary Judgment and a permanent injunction [Dkt. #225]. It did so on a number of Alaska's claims (and dismissed all of Carey's claims), including the Washington Consumer Protection Act claim.  This claim is the only one which included a fee shifting provision.

Alaska then sought[1] "all" its costs and fees for successfully prosecuting its claims and defenses. Alaska's Motion sought only a determination that it was entitled to its fees under the CPA claim and under RCW 4.84.185 (frivolous claims and defenses), leaving to a later determination the quantum of those fees. Defendants' Response [Dkt. #233] complained that no basis for a fee award was provided, and that no effort to "segregate" the fees was made.  Alaska responded that it did not segregate its fees because segregation was not possible and was therefore not required.

The Court entered an Interim Order on Alaska's fee claim, determining that the CPA claim did

---

[1]

provide a fee recovery vehicle, and that RCW 4.84.185 (frivolous claims and defenses) did not. It asked Alaska to segregate where possible and to submit specific billing information. [Dkt. #239]

Alaska has now submitted the billing and fee information. [Dkt. #s240; 243; 247] Defendants filed Surreplies moving to Strike [Dkt. #s 246; 248] the Fogg Declarations [Dkt. #243; 247] because they were not submitted "under penalty of perjury."  The Motions to Strike are DENIED.  Alaska seeks a revised fee award of approximately $188,881, and costs of $4545.

The substance of Alaska's fee request is discussed below.

### III. DISCUSSION

**Determining the Lodestar figure**.

The Court determines the amount of attorneys' fees to be awarded using a two-step process. *See Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006); *McGrath v. County of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995). The first step is to calculate the "lodestar figure" by taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Ballen*, 466 F.3d at 746; *McGrath*, 67 F.3d at 252; *Chuong Van Pham v. City of Seattle, Seattle City Light*, 159 Wn.2d 527, 538, 151 P.3d 976 (2007). The court should then decide whether to adjust the lodestar figure up or down based on any *Kerr* factors which have not already been subsumed in the lodestar calculation. *Ballen*, 466 F.3d at 746; *McGrath*, 67 F.3d at 252.

The twelve *Kerr* factors are:  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976).  These considerations are consistent with Washington Rule of Professional

ORDER - 3

Conduct 1.5.

### 1. Reasonable Hourly Rate

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003). The rates of comparable attorneys in the forum district are usually used. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). In making its calculation, the Court should also consider the experience, skill, and reputation of the attorney requesting fees. *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).

Defendants do not allege that Plaintiff's attorneys lack skill or experience, nor do they claim that the rates billed are unreasonable.

The Court therefore determines that the reasonable hourly rates for attorney Fogg is $295; for attorney Craig, $240; for attorneys Colgen and Dimock, $175. For attorneys of this caliber doing this sort of legal work in the Seattle area, these rates are more than reasonable. Mr. Dick's rate of $525 is much higher, but it is apparent that he did only limited work, and the reasonableness of his rate is not at issue.

### 2. Reasonable Number of Hours

In determining the reasonable number of hours, the Court may exclude those hours that are excessive, redundant, or otherwise unnecessary. *Hensley*, 461 U.S. at 434; *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

Defendants do not directly assert that Alaska's work on this case was excessive or otherwise unnecessary, or that the total number of hours billed was unreasonable. Instead, they point out that Alaska's attorneys' work involved prosecuting 8 separate claims (only one of which, the CPA claim, includes a fee-shifting provision) as well as the defense of the Careys' counter and third party claims. They claim that Alaska had the burden of segregating its fees to ensure that only the effort spent on the CPA claim is the subject to fee shifting. They argue that "segregation of time spent on particular matters is <u>required</u> where attorneys' fees are authorized for only some of the claims." *Citing Gagliardi v. Denny's Restaurant, Inc.*, 117 Wn.2d 426, 450 (1991); *Travis v Washington Horse Breeders Ass'n, Inc.*, 111

ORDER - 4

Wn.2d 396, 410 (1988); *Boeing Co. V. Sierracin Corp.*, 108 Wn.2d 38, 66 (1987); and others to the same effect. [Dkt. # 241 at 4] Because Alaska has admitted that its time entry and billing methodology does not permit it to specifically identify which work was done in pursuit of the CPA claim and which was done on non-recoverable matters, no fee award may be made. Defendants suggest as an alternative that the Court reduce the total fee 50% for defending its counterclaims, reducing another 10% for defense of third parties, and then dividing the remainder by 8 (representing the 8 claims), resulting in a fee award of approximately $9000.

Alaska argues first that it is not seeking fees for the defense of third parties Levine and Ardizzone. More fundamentally, it argues that all of the claims and defenses were necessarily interrelated, and focused on "one illegal business model." Thus, it claims, the inability to segregate the fees is not a matter of record keeping; it is the result of the fact that the claims and facts surrounding all of the claims were inter-related. Citing *Etheridge v. Hwang*, 105 Wash. App. 447, 461 (2001) and *Hume v American Disposal Co.*, 124 Wn.2d 656, 673 (1994) (also cited by Defendants), Alaska argues that under Washington law, where segregation is not possible, segregation need not be done.

The Court is intimately familiar with the work performed by all parties on this case, and has reviewed the materials submitted by both parties in support and in opposition to the fee request. To a limited extent, the Court shares the Defendants' concern that some of the work performed and for which compensation is sought here necessarily was on claims for which fee shifting is not available, and further that some of that work would not have been done absent the other claims.

At the same time, however, it is apparent that Alaska has removed from its fee request those fees which were incurred only on, for example, the breach of contact claims, the abandoned damages claim, and the antitrust defense. It is also clear that a significant portion, if not the bulk of the overall work on the case was useful in pursuing and prevailing on the CPA claim. Put another way, the court is convinced and finds that had Alaska pursued only the CPA claim, it would have prevailed, it would have obtained an injunction, and its fees would have been far in excess of the $9000 Defendant offers as an alternative

ORDER - 5

calculation. For this reason, the Court does find that complete, perfect, and consistent segregation of the fees incurred is not possible, and that the failure to do so is not and should not be fatal to the prevailing parties' fee request.

However, the Court also finds that the record does lend some support to Defendants' claim that the fees requested do in fact overlap to some extent with claims for which fee shifting is not available. In consideration of all of the *Kerr* factors, the record, and the parties' arguments regarding the fees, the Court finds that Alaska is entitled to 65% of the fees requested, or $122,723. This reduction reflects the Court's finding that, conservatively (from defendants' point of view), 35% of the work reflected in the fee request may not have been performed had the remaining claims not been in the case.

## IV. CONCLUSION

As the prevailing party, Plaintiff is entitled to an award of *reasonable* fees and costs. Therefore, IT IS HEREBY ORDERED that Plaintiff's motion for attorneys' fees, costs, and litigation expenses [Dkt. #232] is GRANTED in part. The Court awards Plaintiff reasonable attorneys' fees of $122,273, and reasonable litigation expenses of $4545.

DATED this 2nd day of April, 2010.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE